UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                      No. 1:16-cr-00461-WJ-CG

DARREL SALAZAR,

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S *PRO SE* MOTION FOR COMPASSIONATE RELEASE AND DENYING THE FPD'S MOTION FOR ADDITIONAL TIME FOR SCREENING

THIS MATTER comes before the Court upon Defendant's *pro se* motion to reduce his sentence under 18 U.S.C. § 3582 and First Step Act of 2018 ("compassionate release"), filed October 26, 2020 (**Doc. 54**) and the Federal Public Defender's ("FPD") motion for additional time to screen the case, filed November 3, 2020 (**Doc. 55**). The Court, having reviewed these motions and the applicable law, finds the motions listed above are not well-taken. Therefore, the Court DENIES Defendant's motion for compassionate release and DENIES the FPD's motion for additional time.

### BACKGROUND

In 2017, Defendant pleaded guilty to using, carrying, and brandishing a firearm during, in relation to, and in furtherance of a crime of violence. Doc. 49. He was sentenced to a total term of seven years imprisonment followed by three years under supervised release. *Id.* Defendant, a 52-year-old inmate at FCI Big Springs, a facility operated by the Federal Bureau of Prisons ("BOP"), filed a motion for compassionate release on October 26, 2020. Doc. 54. The essence of

Defendant's request is that a reduction in his sentence is warranted due to the COVID-19 pandemic, his contraction of the virus, and the living conditions in FCI Big Springs' isolation unit. On November 3, 2020, the FPD requested an additional 45 days to screen Defendant's case. Doc. 55.

## DISCUSSION

### I. Defendant's Motion for Compassionate Release

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this general rule and allowed for certain "compassionate release" sentence modifications under 18 U.S.C. § 3582(c)(1)(A). To justify the type compassionate release that Defendant seeks, the Court must find that "extraordinary and compelling reasons warrant such a reduction." *Id.* That said, a district court may not consider a request for compassionate release unless and until the prisoner has exhausted all administrative remedies. See § 3582(c)(1); *see also United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (discussing administrative exhaustion as a jurisdictional requirement). As the movant, Defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

A. <u>Whether Defendant Met the Exhaustion Requirement is not Dispositive in this Case</u>

Before the First Step Act of 2018, Pub. Law 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) was enacted, only the BOP could seek compassionate release. As amended, § 3582(c)(1)(A)(i), now permits courts to consider motions filed by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

Defendant's motion does not make clear whether he has exhausted his administrative remedies. There is no mention of Defendant making a request to the warden of his facility, as required by the statute. Here, for the reasons discussed below, the Court will not address the exhaustion issue because, even if the requirement were satisfied, the Court has other grounds for denying Defendant's motion at this time. Exhaustion is merely the start of the inquiry. If the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).  The Sentencing Commission's relevant policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that:

(i) "extraordinary and compelling reasons warrant the reduction;"

(ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and

 (iii) "the reduction is consistent with this policy statement."

USSG § 1B1.13. Applying this standard, the Court concludes that it must deny Defendant's motion for compassionate release for the reasons discussed below.

B. <u>Extraordinary and Compelling Reasons Do Not Exist</u>

Even construed liberally, as *pro se* pleadings must be, there is nothing in Defendant's motion that would allow the Court to find "extraordinary and compelling reasons" warranting a reduction in sentence. The "extraordinary and compelling reasons" standard may be met based on

a defendant's medical condition, which in relevant part, can include the following categories:[1]

   (1) a defendant who is "suffering from a terminal illness";

   (2) a defendant who is suffering from a serious physical or medical condition;

   (3) a defendant who is suffering from a serious functional or cognitive impairment; or

   (4) a defendant who is experiencing deteriorating physical or mental health because of the aging process;

   . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

If a defendant's medical condition does not fall within one of the categories, the Court must deny his motion. Here, Defendant was diagnosed with COVID-19 on October 1, 2020 and was subsequently assigned to his facility's isolation unit. Doc. 54 at 2. These circumstances are the sole basis for Defendant's request for compassionate release. *See* Doc. 54 at 4 ("I can offer no more extraordinary or compelling reasons for your consideration, [other] than my current plight.").

The Court is not unsympathetic to Defendant's health concerns, nor ignorant of the fact that the coronavirus has struck the prison population hard. However, the Defendant gives the Court no reason to find any chronic health conditions (i.e., ones from which the defendant is not expected to recover) that would "substantially diminish the ability… to provide self-care within the environment of a correctional facility." USSG § 1B1.13, cmt. n.1(A)(ii)(I). Defendant, like many in this country and across the globe, contracted COVID-19, an infectious disease caused by a newly discovered coronavirus.[2] Other than describing his diagnosis and the conditions of the

---

[1]   *See* USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances which are not pertinent here. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

[2]   The Court notes that the World Health Organization ("WHO") has stated "most people infected with the COVID-19 virus will experience mild to moderate respiratory illness and recover without requiring special treatment." *See* https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited Nov. 6, 2020). Older people, and those with underlying medical problems like cardiovascular disease, diabetes, chronic respiratory disease, and

isolation unit, Defendant's motion does not alert the Court to any impairments caused by his COVID-19 infection or health conditions that may interact with the virus.

Defendant supplements his assertion that his COVID-19 diagnosis constitutes an extraordinary and compelling reason by describing how FCI Big Springs treats inmates who test positive for COVID-19. The motion states that inmates being treated in the isolation unit are subject to daily temperature and blood oxygen percentages checks. No inmate may leave the unit unless hospitalization is required. Understandably, Defendant's motion indicates his displeasure with the isolation protocol and lack of medicine or therapies to counteract the effects of the virus. See Doc. 54 at 3 ("We are advised[] there are no medications specific to COVID-19, save for Tylenol which can be purchased via inmate commissary privileges."). However, the Court cannot give credence to the broad assertion that these conditions give rise to "extraordinary and compelling reasons." The Court cannot conclude that the presence of COVID-19 at the FCI Big Springs facility, without more, substantially diminish Defendant's ability to care for himself.

These measures are likely in accordance with the BOP's multi-point plan to battle COVID-19. Preparations began in January 2020 when the BOP instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19. *See* "BOP Modified Operations," https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Oct. 8, 2020) (last visited Nov. 10, 2020). This plan is based on guidance and directives from the World Health Organization, the Centers for Disease Control and Prevention ("CDC"), and other related agencies. *Id.* Under this plan, the BOP has implemented quarantine and isolation protocols, restricted inmate transfers, limited group gatherings, employed screening procedures, and suspended visitation and tours. *Id.* These and other measures are constantly reassessed to further mitigate the exposure and spread of

---

cancer are more likely to develop serious illness. *Id.*

COVID-19 among the federal prison population. *Id.* Additionally, FCI Big Springs works with the Texas Department of Health Services to ensure that CDC guidance is closely followed. *See* Iris Rangel, "COVID-19 Operations FCI Big Spring," https://www.bigspringherald.com/news/covid-19-operations-fci-big-spring/article_41d83a6a-eee8-11ea-9577-6ffebe83fcea.html (last updated September 4, 2020) (last visited November 10, 2020). Of course, these protocols, like their non-prison counterparts, are limited by the lack of effective treatment options available outside hospital settings. Non-hospitalized persons generally cannot rely on medicine other therapies to treat the symptoms of COVID-19. *See e.g.,* Mayo Clinic, "Coronavirus Disease 2019 (COVID-19: Diagnosis and Treatment" https://www.mayoclinic.org/diseases-conditions/coronavirus/diagnosis-treatment/drc-20479976 (stating that only one medication has been approved to treat COVID-19 in hospitalized adults and recommending non-hospitalized persons use pain relievers, cough medication, and increased fluid intake to relieve their symptoms).

Here, as Defendant notes, FCI Big Springs regularly tests all inmates, separates inmates who test positive for COVID-19 from the general prison population, and hospitalizes inmates who become critically ill. There is no suggestion that these protocols compromise Defendant's ability to self-care at FCI Big Springs to the degree necessary to warrant compassionate release, nor is there any reason to believe that the course of Defendant's health condition would be ameliorated outside of the facility. Many courts have denied prisoners' motions for compassionate release even when there are significant numbers of active COVID-19 cases at their facilities and even when the prisoners themselves test positive for the virus. *See e.g., United States v. Mekaeil*, 2020 WL 6318693 (D. Kan. Oct. 28, 2020) (finding no extraordinary and compelling reasons in the absence of individualized showings about defendant's increased vulnerability after recovering from COVID-19); *United States v. Gheith*, 2020 WL 5850162, at *5 (E.D. La. Oct. 1, 2020) (finding

that a previous COVID-19 infection, without more, is not an extraordinary or compelling reason); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) (denying compassionate release where defendant suffered from a serious heart condition and his facility had confirmed cases); *see also United States v. Gileno*, 448 F. Supp. 3d 183, 188 (D. Conn. 2020) ("the Court cannot assume that the [BOP] will be unable to manage [an] outbreak."). Therefore, the Court cannot identify any "extraordinary and compelling reason" warranting a sentence reduction under § 3582(c)(1)(A).

C. Community Safety

Although it has grounds to deny Defendant's motion due to a lack of "extraordinary and compelling reasons," the Court will still address the consideration of community safety. Under the Sentencing Commission's policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

Defendant's underlying conviction stems from a crime of violence, an attempted bank robbery committed on January 11, 2016 in which Defendant pointed a handgun at the teller. Doc. 39. Given the conduct underlying Defendant's conviction, it is doubtful that Defendant would be able to persuade the Court that he would not be a danger to the community if he was released—even assuming he was able to show that his medical condition was serious enough to interfere with his ability to care for himself within the facility.

**II.     The FPD's Motion for Additional Time to Screen the Case**

Defendant has no constitutional right to counsel in pursuing his §3582 motion, although the Court may appoint counsel in its discretion. *See Engberg v. Wyoming*, 265 F.3d 1109, 1121–22 (10th Cir.2001); *United States v. Olden*, 296 F. App'x 671, 674 (10th Cir. 2008); *United States*

*v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008). The Court's Administrative Order allows the FPD to file a limited motion requesting the appointment of counsel in a criminal case if the FPD discerns that a defendant "may have a nonfrivolous claim for compassionate release." Admin. Order, 20-mc-00004, Doc. 30. Here, the FPD requests 45 additional days to "allow [Defendant] to exhaust if he has not already done so, or to obtain copies of the warden request and the denial (if there was any response)" and to evaluate the general viability of Defendant's request. Doc. 55. As discussed above, the Court is not addressing the exhaustion issue in Defendant's motion because it is not dispositive. At this time allowing the FPD additional time to screen the case would be fruitless: the Court has already found that extraordinary and compelling reasons do not exist at this time. Given the nature of this case, the Court denies the FPD's motion.

## CONCLUSION

**THEREFORE**, for the reasons put forth in this Memorandum Opinion and Order, the Court **DENIES** Defendant's motion for compassionate release (**Doc. 54**) and, in an exercise of its sound discretion, **DENIES** the FPD's motion for extension of time (**Doc. 55**).

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE